## Commonwealth v. Kentucky Power & Light Co.

(Decided Dec. 21, 1934.)

B. P. WOOTTON, Attorney General, DAVID C. WALLS, Assistant Attorney General, and M. HARGETT, Commonwealth's Attorney, for Commonwealth.

GORDON, LAURENT & OGDEN and BROWNING, REED & ZEIGLER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Certifying law.

The appellee was indicted for the alleged violation of chapter 49 of the Acts of 1932, now section 2223-1 et seq. of the Statutes. The case being tried without the intervention of a jury, the court adjudged the defendant not guilty of the offense charged in the indictment. Thereupon this appeal was prosecuted for the purpose of having the law certified. The act under which the appellee was indicted, including its title, reads:

"An Act to require a public utility company to pay interest at rate of six [6] per cent annually on amounts they exact as deposits as security for the payment of gas, electric and water accounts.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"Sec. 1. That public utilities, such as gas, electric and water companies shall be required to pay holders of certificates of deposits six [6] per cent annually on amounts exacted from patrons for gas, electric and water accounts.

"Sec. 2. Failure to comply with the above section shall subject the Utility Company violating said provision to indictment and prosecution and upon conviction to a fine of not less than One Hundred [$100.00] Dollars for each offense." (Ky. Stats. Supp. 1933, secs. 2223-1, 2223-2.)

The facts as stipulated by the parties are: On September 5, 1931, Katherine Rudy contracted with the appellee for electric service, at the same time depositing the sum of $5 with the appellee to secure it in the payment of any bill she might incur. She received from the appellee a receipt showing this deposit. No interest was paid to Katherine Rudy on this deposit until December 1, 1933, upon which date interest in the amount of 67 cents was paid to her by a credit on her electric bill of that date. During all the period from September 5, 1931, to December 1, 1933, Katherine Rudy had been a customer of the appellee and did not during that time make any demand upon the appellee for the payment of any interest on her deposit. Indeed, she did not know that she was entitled to receive any interest on her deposit until she might cease to be a patron

of the company and demand the return of her deposit. Katherine Rudy is yet a customer of the appellee.

The question of the appellee's guilt or innocence under these stipulated facts turns on the construction to be put upon the act in question. The commonwealth contends that it was the mandatory duty of the appellee at the end of each year following the deposit of a customer to pay such customer interest on that deposit at the rate of 6 per cent. per annum. The appellee contends that the act means no more than the rate of interest to be paid is 6 per cent. per annum, but that the interest is not payable until the customer demands the return of his deposit. It must be confessed that the language of the act is not clear and is susceptible of many constructions, including that of the commonwealth and that of the appellee. In arriving at what the Legislature intended by this act, we must remember that the deposit of the customer was subject at all times to a demand by the customer for its return. The customer, of course, would in that contingency have to cease to be a patron of the company or make other arrangements about securing his bill. The deposit being subject to this demand for its return at all times, it partook of the nature of a demand loan. In the case of Union Light, Heat & Power Co. v. Mulligan, 177 Ky. 662, 197 S. W. 1081, this court held that if a public service company requires a deposit as here it must pay interest thereon. At common law the rule is that in the absence of contractual provisions to the contrary, interest is due and payable at the time the principal is due. 33 C. J. 187. See Turner v. Roby, 7 J. J. Marsh. 209. In the case of a demand loan, since the loan is not due until demand is made for it, it follows that in the absence of any statute to the contrary the interest on the customer's deposit as here would not be due until demand for the return of the deposit be made. Clearly the purpose of the act of 1932 was to give the customer the right to get his interest from time to time by way of payment or credit on his bill without the necessity of demanding the return of his deposit, a demand that could not be made unless he ceased to be a patron of the company or he made other arrangements about securing his bill. The Legislature intended that the customer could continue as a customer, leaving his deposit with the company, but at the same time should have the right to obtain his interest at the end of each year if he desire it. The Legislature did not mean to put upon the company the duty

of hunting up its customers and thrusting the interest into their hands, nor to compel it in the absence of a request by the customer to credit his bill by the interest. Indeed, too often a service is disconnected while the customer is moving or sojourning in the north or south, and there is no bill for the time being to credit. The Legislature intended to put upon the public service companies only the duty to pay or credit the interest if the customer demanded that it be paid or credited. We are, therefore, of the opinion that the act means that it is the duty of the company to pay or credit this interest at the rate of 6 per cent. per annum at the end of each year from the date of the deposit providing demand is made by the customer for such payment or credit. In the absence of such demand, the interest continues to run. Of course, the company may voluntarily, if it wishes, credit the bill with the interest, as it did in this case; but no criminal liability under the act is incurred by the company unless it refuses to pay or credit the interest at the end of the deposit year on demand being made therefor by the customer. The lower court's ruling being in accord with these views, his judgment in finding the appellee not guilty was correct. The law is so certified.

Whole court sitting.