**CENTRAL POWER AND LIGHT COMPANY, Appellant,**

v.

**STATE of Texas, Appellee.**

No. 202.

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 29, 1966.

Rehearing Denied Dec. 29, 1966.

Philip McConnell, Corpus Christi, for appellant.

W. O. Shultz, Asst. Atty. Gen., Austin, for appellee.

## OPINION

SHARPE, Justice.

This suit was brought by the State of Texas, appellee, upon the relation of its State Treasurer, to escheat certain personal property held by Central Power and Light Company, appellant, under the provisions of Article 3272a, Vernon's Ann.Civ.St. Five categories of property were originally involved in the trial court, i. e., (1) unclaimed dividends and funds for redemption of stock, (2) unclaimed customer's service deposits and interest thereon, (3) unclaimed funds for the redemption of bonds, (4) unused and unclaimed deductions from employees salaries for the purchase of United States Savings Bonds, and (5) unclaimed wages. All of these funds had been unclaimed for seven years prior to filing of the instant suit, and were alleged to be abandoned.

In a non-jury trial, judgment was rendered ordering escheat as to the first four above-mentioned categories, but denying it as to the fifth, concerning unclaimed wages, on the basis that such claims were barred by limitation. At the request of appellant, the trial court made and filed findings of fact and conclusions of law, which will be more fully discussed in the course of the opinion.

Appellant urges two points of error, as follows:

## FIRST POINT

The error of the Trial Court in finding and adjudging that the customers' service deposits and accrued interest thereon constituted a pledge or bailment and the relationship of debtor-creditor between the Appellant and the customers was not created and that limitations had not run against the former customers' rights or claims thereto; hence, the State was entitled to escheat such claims and enforce them against Appellant.

## SECOND POINT

The error of the Trial Court in adjudging the escheat by the State of Texas of claims to funds of debts in favor of claimants or creditors whose last known addresses were, according to Appellant's books and records, in other states than Texas with laws providing for the escheat of such claims to funds and debts.

On this appeal only unclaimed customers service deposits are involved under point one, and unpaid dividends on preferred stock under point two.

Hereafter, appellant will sometimes be referred to as the "Company" and the parties who contracted with it for service as the "Customer" or "owner of the deposit."

The basic facts relating to point one will be briefly stated. Appellant is a public utility corporation, incorporated under the laws of Texas, engaged in the business of generating and selling electric power and energy. Over a period of some forty years, ending in 1957, covered by the State's suit, approximately 29,000 former customers of appellant failed to claim service deposits and accrued interest thereon totaling $76,-904.49 upon discontinuing electric service from appellant. Each of these unclaimed deposits with any accrued interest thereon was reported to the State Treasurer in accordance with the requirements of Article 3272a, V.A.C.S. The originals of these reports were introduced in evidence in the trial court as Plaintiff's Exhibit No. 1 and have been forwarded to and are part of the record in this Court. Representative or specimen forms of receipts and certificates issued to customers in connection with these deposits are also in the record. The customers making the deposits discontinued taking electric service more than seven years before the institution of this suit by the State. Beginning in the year 1936, all

inactive customers deposits held by appellant for five years after discontinuance of service have been transferred to nonoperating income and, accordingly, were included in income for payment of federal income taxes. This practice was followed through the calendar year 1960.

With reference to customers service deposits the trial court made findings of fact as follows:

"1. I find that the funds involved in this suit which are designated as 'inactive customer deposits' were deposited with Central Power & Light Company by the persons listed in Exhibit C of Plaintiff's Exhibit No. 1 as a condition precedent to the furnishing of electrical service to such persons by Central Power & Light Company.

"2. I find that Central Power & Light Company acknowledged by the receipts issued that such deposits were security for the payment of any and all indebtedness for services rendered by Central Power & Light Company to the depositor.

"3. I find that, subsequent to the dates Central Power & Light Company filed its reports of property subject to escheat and prior to the time this action was filed, such company either refunded or credited on existing accounts 1733 'inactive customer deposits' listed in Exhibit C of Plaintiff's Exhibit No. 1 totaling $8850.96 upon demand and without protest that the statutes of limitation barred the recovery of such deposits."

Also concerning customers service deposits, the trial court filed conclusions of law as follows:

"1. I conclude that the deposits of money held by Central Power & Light Company as 'inactive customer deposits' are held in a fiduciary capacity pursuant to a type of bailment known as a pledge.

"2. I conclude that the periods of limitation provided by the statutes of this State have never commenced to run and the

causes of action of those persons listed in Exhibit C of Plaintiff's Exhibit No. 1 for the return of their deposits have not been barred by such statutes of limitation.

"3. I conclude that Article 1440 of Vernon's Civil Statutes imposes upon Central Power & Light Company an absolute duty to return the 'inactive customer deposits' in question and that the limitation statutes of this State cannot relieve the Company of such duty or bar an action to compel the performance thereof.

"4. I conclude that the plea of limitations asserted by Central Power & Light Company has as its sole purpose the circumvention and avoidance of the provisions of Article 3272a of Vernon's Civil Statutes and is not intended to preclude the right of the persons making such deposits to have them returned."

Under its first point, appellant's basic argument is that the unclaimed customers service deposits and accrued interest thereon were barred by the two and/or four-year statutes of limitation, and that the State can escheat no greater right than the former owners or claimants had, which amounts to no more than an unenforcible claim against appellant. Appellant further specifically contends that the customers service deposits created only simple debts arising out of a creditor-debtor relationship which were barred by limitation when this suit was filed. Appellee contends that the trial court correctly concluded that they were pledges or bailments and that limitations would not begin to run in the absence of a showing that repudiation of the pledges had been communicated to the pledgeors; therefore, that the claims were enforcible against appellant.

In Southern Pacific Transport Company v. State of Texas, 380 S.W.2d 123 (Tex. Civ.App., 1964, writ refused), it was held that statutes of limitation can be plead against the State of Texas to bar enforcement of stale claims which are escheated under Article 3272a, V.A.C.S.; that when the right to plead limitations vests in a de-

fendant, it cannot be constitutionally divested by the State; that the State can escheat no greater right to enforce the claim than was held by the former owner; that after limitations had run, whatever claim the State escheated was unenforcible; and that, although the State could recover judgment escheating the claims, a judgment enforcing payment of the same was improper.

The exact question as to whether claims to customers service deposits of the type involved here are subject to the running of the statutes of limitation has not been passed upon by Texas appellate courts.

Appellant relies in part upon cases from other jurisdictions holding that the relationship between the claimant and the holder of the deposit is that of debtor-creditor; and that limitations will bar enforcement of the claim. See State of New Jersey v. Atlantic City Electric Company, 23 N.J. 259, 128 A.2d 861 (1956); State of New Jersey by Furman v. Plainfield-Union Water Company et al., 75 N.J.Super. 571, 183 A.2d 684 (1962); Commonwealth v. Kentucky Power & Light Company, 257 Ky. 66, 77 S.W.2d 395 (1934). The New Jersey escheat cases in determining the contractual intent of the parties place emphasis upon the factors that the customers service deposit was made and accepted without restriction as to use and without objection to commingling it with the general funds of the company; and that the company obligated itself to pay interest at a fixed rate per annum. The relationship between the company and customer was there held to be that of debtor and creditor. The only case cited to us holding to the contrary, and strongly relied upon by appellee, is Brooklyn Borough Gas Co. v. Bennett, 154 Misc. 106, 277 N.Y.S. 203 (1935), a trial court decision.

The subject of utility customer service deposits has been dealt with in two Texas Statutes: Article 1440, V.A.C.S., and Article 1054, Vernon's Ann.P.C. From 1923 until amended in 1963 those statutes read as follows:

"Art. 1440. Deposits for installing service

"Every person, firm, company, corporation, receiver or trustee engaged in the furnishing of water, light, gas or telephone service which requires the payment on the part of the user of such service a deposit of money as a condition precedent to furnishing the same, shall pay six per cent interest per annum on such deposit to the one making same, or to his heirs or assigns, from the time of such deposit, the same to be paid on the first day of January of each year or sooner if such service be discontinued. When such service is discontinued, such deposit, together with any unpaid interest thereon, or such part of such deposit and unpaid interest, not consumed in bills due for such service, shall be returned to such depositor, his heirs or legal representatives. Acts 2nd C.S. 1923, p. 101."

"Art. 1054. Deposit for installing service

"Every person, firm, company, corporation, receiver or trustee engaged in the furnishing of water, light, gas or telephone service which requires the payment on the part of the user of such service a deposit of money as a condition precedent to furnishing any such service, shall pay six per cent interest per annum on such deposit to the one making same, or to his heirs or assigns, from the time of such deposit, the same to be paid on the first day of January of each year, or sooner if such service be discontinued. When such service is discontinued, such deposit, together with any unpaid interest thereon, or such part of such deposit and unpaid interest not consumed in bills due for such service, shall be returned to such depositor, his heirs or legal representatives. Whoever violates any provision of this article shall be fined not less than twenty-five nor more than two hundred dollars, or be confined in jail not less than six months nor more than one year, or both. Acts 2nd C.S. 1923, p. 101."

The said statutes were amended by Acts 1963, 58th Legislature p. 50, ch. 32, Sections 1 (Art. 1440, V.A.C.S.) and 2 (Art. 1054, V.A.P.C. so as to provide that interest on deposits would be payable annually on demand, instead of on the first day of January of each year, but such amendments are not material to disposition of the instant suit.

A review of analogous Texas cases leads us to the view that the majority rule concerning customers service deposits, particularly as announced in the persuasive New Jersey decisions, should be followed by us. The case of Brooklyn Borough Gas Co. v. Bennett, supra, appears to be distinguishable on several grounds, particularly because of the differences in the Statutes of New York there involved and the pertinent Texas Statutes.

The basic relationship between the company and the customer here is that of supplier and user; and a customer's service deposit was required by the contract which created that relationship, as security for payment of the user's bill. Although three different forms of receipts or certificates appear in the record, they all provide in substance that when service is discontinued the company will refund or return the deposit together with unpaid interest thereon less any amounts due it. The provisions of the above-mentioned statutes concerning return of the customer's service deposit are substantially the same as contained in the agreement of the parties. In any event, the statutory provisions would be incorporated into the contract between the parties. Winder Bros. v. Sterling, 118 Tex. 268, 12 S.W.2d 127, 14 S.W.2d 802 (1929).

The contract thus provides for the time and manner for discharging the company's obligation concerning the deposit. The time is upon discontinuance of service and settlement of the account. The manner of determining the amount is that the customer's bill, if any, may be deducted from the deposit; and if there is no bill, the full amount of the deposit is to be returned to the customer.

When service is discontinued the relationship of supplier and user ceases to exist. When the amount of the customer's bill is ascertained the sum of money owed by the company is then settled. The deposit, or balance of it, is no longer security held for payment of a debt owing by the customer. Collection by the customer is all that remains to terminate the transaction. He has a right to collect and the company has an obligation to pay, both of which are fixed by the contract.

There is nothing in the contract between the parties which shows an intent that the company would hold the deposit indefinitely after the relationship of supplier and user is terminated. On the other hand, the intent shown is that the customer would have a matured right to a refund of an amount of money equivalent to the deposit, or the balance of it, after discontinuance of service and settlement of the account. Under these conditions, the obligation of the company is nothing more than to pay a simple debt.

We therefore hold that the legal relationship between the company and its customers established in this case was that of debtor and creditor; and that the statutes of limitation can be properly asserted by the company, if it so elects, as a defense to the claim of the owner of the deposit. Limitations will begin to run on the owner's claim for return of the deposit when service is discontinued plus a reasonable time for the ascertainment of the amount of the customer's bill and the balance owed by the company.

The trial court erred in concluding that the company held that customers service deposits in a fiduciary capacity pursuant to a type of bailment known as a pledge; that the customers claims were not barred by limitation; that Art. 1440, V.A.C.S., imposes an absolute duty upon the company to return such deposits, of which it cannot

be relieved by the statutes of limitation; and that the company's plea of limitations was for the sole purpose of avoiding the provisions of Art. 3272a, V.A.C.S., and, therefore, ineffective.

In addition to our holding that the contracts in question show an intent to create the relationship of debtor and creditor, it is further apparent that the customer's service deposits are not attended by the legal characteristics of pledges and that the parties do not have the remedies of pledgeor and pledgee.

■ It appears here that title to the specific money deposited by the customer passed to the company upon its delivery. Story v. Palmer, 284 S.W. 331 (Tex.Civ. App.1926, n. w. h.). The money so deposited was not segregated to preserve its separate identity, but was commingled with the general funds of the company. Upon discontinuance of service and settlement of the account, the owner of the deposit, or the balance of it, had a claim, not to specific money, but to an amount of money owed by the company. Thus, the essential element of a pledge, that the pledgeor retain title to the property pledged is lacking. See First Nat. Bank of Wichita Falls v. McCamey, 130 Tex. 148, 149, 105 S.W.2d 879 (1937).

■ It further appears that the company did not have a lien on the money actually deposited, because its specific identity was lost. Instead, the company originally acquired title to the money, and after it was commingled with other funds had a contract right to apply the amount held by it to the customer's bill. Foreclosure on specific money was impossible, and as to an amount of money was unnecessary. It thus appears that another essential element of a pledge, that the pledgee have a lien on property and consequent right to enforce it, is also lacking. First Nat. Bank of Wichita Falls v. McCamey, supra.

■ It is also the rule that where a valid pledgeor-pledgee relationship exists orig-

inally and the pledgor's debt is satisfied, the pledgee is legally obligated to return the property pledged to the pledgeor. If the pledgee fails to perform such obligation the pledgor may elect to recover the property itself, or to sue for damages for breach of contract of the pledgee's obligation to return it, or to recover the proceeds in case it has been sold. See 46 Tex.Jur.2d, Pledges and Collateral Security, Sec. 18, p. 212. In this case the company could not return the specific money, but could return only an amount of money owing to the customer upon discontinuance of service and settlement of the account. The customer's cause of action, therefore, could not be for return of the specific property pledged; neither could it be for conversion of specific property, since it appears that title to the money had long since passed to the company under the agreement of the parties. The remedy of the customer would simply be that of a creditor for recovery of a debt against which statutes of limitation will operate.

There is authority for the proposition that where money, as distinguished from other personal property, is deposited to secure payment of an account, the deposit is not a pledge, but is the subject of a creditor-debtor relationship. See Wilcox v. Gauntlett, 200 Mich. 272, 166 N.W. 856, (1918); Commercial National Bank v. Cutter Realty Company, 205 N.C. 99, 170 S.E. 139 (1933). There are several Texas cases dealing with money deposits as security for payment or performance of lease contracts, in none of which are the deposits treated as pledges. See Smith v. J. Weingarten, Inc., 120 S.W.2d 878 (Tex. Civ.App., 1938, wr. dism.); Fry v. Spencer, 141 S.W.2d 730 (Tex.Civ.App., 1940, n. w. h.); Hill and Hill Truckline, Inc., v. Powell, 319 S.W.2d 128 (Tex.Civ.App., 1958, n. w. h.)

■ Although we are convinced that only a relationship of creditor-debtor is here involved, it is also apparent that even if a pledgeor-pledgee relationship origi-

nally existed, the claims in question are nevertheless subject to a defense of limitations. Here the owner of a customers service deposit had a claim for the return of the deposit, or balance of it, upon discontinuance of service and settlement of the account. The amount of the company's liability was then fixed and only collection by the owner remained. The case therefore is subject to the rule that if the only act necessary to perfect a plaintiff's cause of action is one to be performed by him, and he is not under legal disability, that he cannot indefinitely suspend the running of limitations by delaying performance of the act. See Jackson v. Tom Green County, 208 S.W.2d 115 (Tex.Civ.App., 1948, wr. ref. n. r. e.). If demand was an integral part of the customer's cause of action for return of the deposit, it is true that limitation would not run unless waived or unreasonably delayed; however, it has been held that in the absence of mitigating circumstances, a time coincident with the running of the statute of limitations will be deemed reasonable, and if demand is not made within that period, the action will be barred. Cook's Adm'rs v. Cook, 19 Tex. 434 (1857); Foreman v. Graham, 363 S.W. 2d 371 (Tex.Civ.App.1962, n. w. h.); Aetna Casualty and Surety Co. v. State for Use and Benefit of City of Dallas, 86 S.W.2d 826 (Tex.Civ.App.1935, wr. ref.). In this case every claim for refund of deposit was more than seven years old when this suit was filed. There is no showing of disability or other reason on the part of customers or owners of the claim which would prevent making of demand. It thus appears that if demand was necessary, it has been unreasonably delayed, and the four year statute of limitation is available as a defense.

■ We now pass to a discussion of the trial court's conclusions of law numbers 3 and 4, which hold in substance that Art. 1440, V.A.C.S., imposes an absolute duty on the company to return the customer's service deposits not subject to relief under statutes of limitation, and that the sole purpose of the pleas of limitation here was to circumvent the provisions of Art. 3272a, V.A.C.S. Appellee argues that in enacting Articles 1440, V.A.C.S., and 1054, V.A.P.C., the legislature intended that the relationship between utilities and their customers concerning deposits be something other than debtor-creditor; that there was thereby created an absolute duty to return the deposit not subject to operation of statutes of limitation. The trial court agreed with these contentions in its conclusions of law. Appellant contends that the trial court erred in so concluding and that the statutes of limitation are fully applicable to the customer's service deposits. Appellant particularly says that the legislative history of Art. 3272a, V.A.C.S., supports its position and, further, that the courts will not imply exceptions to the operation of statutes of limitation in order to circumvent a defensive plea based upon the same. We agree with appellant.

■ At its First Called Session in 1961 the Texas Legislature passed H.B. 5, 57th Legislature, p. 49, Ch. 21, now codified as Article 3272a, V.A.C.S., which statute is completely silent on the subject of limitations in escheat cases. Appellant points to the fact that at the same session, H.B. 182 was rejected by the Texas House of Representatives. Sec. 16 of that bill reads as follows:

"The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this act or to pay or deliver abandoned property to the State Treasurer."

Appellant further calls attention to the fact that at the Regular Session of the 59th Legislature in 1965, H.B. 117 was introduced for the purpose of amending the

original 1961 act, now Art. 3272a, V.A.C.S. Section 16 of that bill, as originally introduced, contained a provision that periods of limitation would not be a bar to the escheat of abandoned property. That section was deleted by the House Committee on Revenue and Taxation. As finally passed H.B. 117, Acts of 1965, 59th Legislature, p. 1230, Ch. 565, amending Art. 3272a, V.A.C.S., remained silent on limitations in escheat cases.

It is apparent that if the legislature had intended that statutes of limitation would not be available as a defense in escheats of "security deposits, unclaimed refunds and deposits for utility and other services" provided for in Articles 1440, V.A.C.S., and 1054, V.A.C.C., that the above-mentioned provisions would not have been omitted or deleted from the final act. Our conclusion on this point is in accord with the statement in Southern Pacific Transport Company v. State, supra, wherein the court at 380 S.W.2d 127, 128, said:

"There is no express provision in the laws of Texas which abrogates appellant's right to plead limitation as against enforcement of claims which are barred before escheated, nor is there any implied exception of which we are aware."

\*　　\*　　\*　　\*　　\*　　\*

"In Continental Supply Co. v. Hutchings, Tex.Civ.App., 267 S.W.2d 914, error ref., the court said: 'Statutes of limitation are now generally regarded with favor by the courts, are to be construed as other statutes, and their application is not to be evaded by implied exceptions.' "

■ Appellee also argues, in accordance with finding of fact No. 3 of the trial court that appellant, subsequent to filing its report, had made refunds or credits on 1733 accounts designated "inactive customer deposits" amounting to $8,850.96, without protest or insistence upon limitations, that such deposits were admitted to be pledges. This position is not well taken. Appellant's waiver of the bar of limitations in some instances was permissible at its election and would not effect other claims which are subject to the defense of limitation. In any event, such waiver would not transform a debt into a pledge. To sustain appellee's position on this point, we would necessarily be engrafting an additional exception to the operation of statutes of limitation, which is not permissible. Southern Pacific Transport Company v. State, supra; Continental Supply Co. v. Hutchings, supra.

■ For the reasons stated, appellant's point one is sustained as to lack of enforcibility of payment of the claims involving customer's service deposits which are barred in any event by the four year statute of limitations.

Appellant's point two must also be sustained. The trial court erred in holding that the State of Texas was entitled to escheat certain claims in favor of various small creditors for dividends on preferred stock in the amount of $462.06 where appellant's records and reports reflected that such unclaimed dividends were in the names of persons or claimants whose last known addresses were in nine other States having laws providing for escheat of such claims and funds. The record reflects that such laws were brought to the attention of the trial court.

■ The question here presented has been authoritatively settled by the decision of the Supreme Court of the United States in the case of The State of Texas v. State of New Jersey et al., 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965). There it was held that claims for debts or funds involving intangible personal property had their situs with the creditor, and that the State in which he is shown to reside, as reflected by the debtor's books, if it has an applicable escheat law, is the only State entitled to effect such escheat. That rule is applicable here to the extent that appellant is indebted for unclaimed dividends on preferred stock to the creditors who reside in other States having escheat laws.

The State of Texas is not entitled to escheat the same.

The trial court erred in holding by its conclusions of law 5, 6 and 7, that such nine other States, in the absence of jurisdiction in personam over appellant did not have the power to escheat the claims or property held by it, even though the last known address of the person entitled thereto was in such other States.

We are, therefore, of the opinion that as to customer's service deposits involved under point one, the judgment escheating such claims should be affirmed, but that portion ordering appellant to pay the amount of such escheated claims should be reversed and rendered in favor of appellant; and that as to the dividends on preferred stock involved under point two, the judgment should be reversed and here rendered that such claims and funds are not subject to escheat by appellee. The judgment is otherwise affirmed.

Affirmed in part and reversed and rendered in part.