TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00169-CV






Texas Workers' Compensation Commission and Subsequent Injury Fund, Appellants



v.



Texas Municipal League Intergovernmental Risk Pool, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 97-08011, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 







 Appellee Texas Municipal League Intergovernmental Risk Pool ("Risk Pool") sued
appellants Texas Workers' Compensation Commission ("TWCC") and the Subsequent Injury Fund
("Fund") seeking a declaratory judgment that certain provisions of the Texas Workers'
Compensation Act (1) and the TWCC rules implementing those statutory provisions (2) are
unconstitutional as applied to Risk Pool members. The trial court held the challenged statutory
provisions and TWCC rules to be unconstitutional to the extent they require the Risk Pool to
contribute to the Fund. We will reverse the judgment of the trial court and render judgment for
appellants.




BACKGROUND



The Statutory Scheme


 This case involves the interplay between the Subsequent Injury Fund, administered
by TWCC, and the statutory requirement that political subdivisions provide workers'
compensation coverage to their employees.

 All political subdivisions are required to provide workers' compensation benefits
to their employees by (1) becoming a self-insurer, (2) obtaining an insurance policy, or (3) joining
with other political subdivisions to self-insure through a "joint insurance fund." See Tex. Lab.
Code Ann. §§ 504.011, .016 (West 1996). The Risk Pool is a joint insurance fund consisting of
more than 1600 Texas cities that have chosen to collectively self-insure.

 The Subsequent Injury Fund is a special fund in the state treasury that is
administered by TWCC. See id. § 403.006(a), (c). The Fund is liable for workers' compensation
benefit payments whenever an injured employee from anywhere in Texas has suffered a
compensable injury that, combined with the effects of a previous injury, results in a condition for
which the employee is entitled to lifetime workers' compensation benefits. Id. § 408.162. The
Fund is also liable for reimbursements to insurance carriers either within or outside the State that
have paid benefits pursuant to a TWCC order that is later overturned on appeal. Id.
§§ 410.032(b), .205(c).

 The Subsequent Injury Fund is funded through mandatory contributions from
workers' compensation insurance carriers. (3) See id. §§ 403.007(a), 408.184(c). Specifically, if
a covered person dies as a result of a compensable injury and has no legal beneficiary at the time
of death, the carrier must contribute 364 weeks of death benefits to the Fund. See id.
§ 403.007(a). Similarly, if a legal beneficiary ceases to exist before the expiration of 364 weeks,
the carrier must contribute the difference between the amount paid to the beneficiary and the
amount that would have been paid for 364 weeks. See id. § 408.184(c). Simply put, the Fund
receives unclaimed death benefits that otherwise would have been payable to a beneficiary. 
TWCC implements sections 403.007(a) and 408.184(c) through its rules found at 28 Texas
Administrative Code sections 132.10, 132.11, and 132.12. These mandatory contribution
requirements form the basis of the Risk Pool's constitutional challenge.


Procedural Background


 In 1997 TWCC ruled that the city members of the Risk Pool are required to pay
into the Fund any unclaimed death benefits pursuant to sections 403.007(a) and 408.184(c) and
the related TWCC rules. In response to that determination, the Risk Pool sought declaratory relief
that these statutory provisions and TWCC rules are unconstitutional as applied to the cities
participating in the Pool. The trial court agreed, finding that they violated article III, section 52(a)
of the Texas Constitution (prohibiting political subdivisions from lending credit or granting public
money) and article VIII, section 1-e of the constitution (abolishing state ad valorem property
taxes). This appeal followed.

 TWCC asserts in four issues that the statutory provisions and TWCC rules in
question do not violate either article III, section 52(a) or article VIII, section 1-e of the Texas
Constitution (4) and, in any case, that the Risk Pool lacks associational standing to bring a
constitutional challenge on behalf of its members or, alternatively, lacks standing to bring this suit
because it has accepted benefits under the very statutory scheme it now challenges.


DISCUSSION



Associational Standing


 The Texas Supreme Court has adopted the three-prong test for associational
standing enunciated by the United States Supreme Court in Hunt v. Washington State Apple
Advertising Commission, 432 U.S. 333 (1977). See Texas Ass'n of Business v. Texas Air Control
Bd., 852 S.W.2d 440, 448 (Tex. 1993). An association has standing to sue on behalf of its
members when: (1) the members themselves have standing to sue in their own right; (2) the
interests the association seeks to protect are germane to the organization's purpose; and
(3) participation of the individual members in the lawsuit is not necessary. See Hunt, 432 U.S.
at 343.

 TWCC concedes that prongs one and three are met in the present suit, but it
contends the interests that the Risk Pool seeks to protect are not germane to the organization's
purpose. TWCC argues that the Pool has authority only to process and pay or defend claims, not
to "crusade for the constitutional rights of municipalities." See Lab. Code § 504.016.

 Clearly, the purpose of a joint insurance fund at its most basic level is to administer
workers' compensation coverage on behalf of its members, i.e., to pay or defend against workers'
compensation claims brought by city employees. See id. §§ 504.011, .016. This, however, is the
exact interest the Pool seeks to further by its request for a declaratory judgment in this case--a
determination whether the Pool must pay workers' compensation death benefits on behalf of a
member city.

 Further, the bylaws of the Risk Pool show that the interest the Pool seeks to protect
is germane to the organization's purpose. The legislature has expressly allowed for a joint
insurance pool such as the Risk Pool to be operated under bylaws established by its members. See
id. § 504.016(c). The bylaws of the Pool provide that its purpose and objectives are to
"formulate, develop and administer a program of self-insurance for the [membership]." The
bylaws allow the Pool to hire an attorney to protect the members' funds. We believe that seeking
a determination of what payments are required to be made by the Pool on behalf of its members
is germane to the organization's purpose as stated in its bylaws.

 We conclude that the Risk Pool has met the second prong of Hunt. Accordingly,
we hold that the Pool has associational standing to bring this constitutional challenge.


Acceptance of Benefits


 TWCC next complains that the Risk Pool lacks standing to bring this declaratory
action because it has sought reimbursement benefits pursuant to the same statutory scheme it now
challenges. The Pool denies that it has sought reimbursement benefits in the past, but argues that,
even if it had, such a consideration is irrelevant.

 Generally speaking, a court will not pass on the constitutionality of a statute at the
request of one who avails himself of its benefits. See, e.g., McElhaney v. Tyler, 926 S.W.2d 597,
602 (Tex. App.--Tyler 1996, writ denied); Prudential Health Care Plan, Inc. v. Commissioner
of Ins., 626 S.W.2d 822, 833 (Tex. App.--Austin 1981, writ ref'd n.r.e.) This Court has
previously found, however, that participation in the workers' compensation system does not bar
a constitutional challenge to the Act where participation in the system is compulsory. See Ben
Robinson v. Texas Workers' Comp. Comm'n, 934 S.W.2d 149, 153 (Tex. App.--Austin 1996,
writ denied). The political subdivision members of the Risk Pool are statutorily required to
provide workers' compensation coverage to their employees. See Lab. Code § 504.011. 
Therefore, the Pool is not precluded from challenging the constitutionality of a portion of the Act
by virtue of having acted on behalf of the member cities in accepting benefits under the Act. (5)

 Having disposed of TWCC's standing arguments, we now turn to the
constitutionality of the statutory provisions and TWCC rules at issue.


The Constitutionality Issues


 The court below held that challenged sections 403.007(a) and 408.184(c) of the
Labor Code and the related TWCC rules violate article III, section 52(a) and article VIII, section
1-e of the Texas Constitution as applied to the Risk Pool members. Article III, section 52(a) states
that the legislature may not authorize any "county, city, town or other political corporation or
subdivision of the State to lend its credit or to grant public money . . . to any individual,
association, or corporation . . . ." Tex. Const. art. III, § 52(a). The Pool contends that the
Fund's mandatory contribution scheme unconstitutionally requires its member cities to lend their
credit or grant public money because contributions made into the Fund are later "paid out"
throughout the State with no guarantee the money will benefit the paying city. Article VIII,
section 1-e of the constitution provides that "[n]o State ad valorem taxes shall be levied upon any
property within this State." Tex. Const. art. VIII, § 1-e. The Risk Pool argues that requiring its
city members to pay unclaimed death benefits into the Fund allows the State to unconstitutionally
"recapture" local tax dollars and redistribute them to other parts of the State, thus effectuating a
means to indirectly collect a state ad valorem tax. See Carrollton-Farmers Branch Indep. Sch.
Dist. v. Edgewood Indep. Sch. Dist., 826 S.W.2d 489, 500-01 (Tex. 1992); Edgewood Indep. Sch.
Dist. v. Kirby, 804 S.W.2d 491, 500 (Tex. 1991).

 Pursuant to sections 403.007 and 408.184 of the Labor Code, workers'
compensation carriers, including self-insuring cities, must contribute to the Fund those death
benefits for which "no legal beneficiary survives or a claim for death benefits is not timely made"
or for which "all legal beneficiaries . . . cease to be eligible." See Lab. Code §§ 403.007,
408.184. If, after the carrier makes a payment to the Fund, it is later determined that a legal
beneficiary is entitled to the death benefits, the Fund must reimburse the carrier the amount
overpaid. See id. § 403.007(d). TWCC argues that this statutory scheme is most analogous to
a custodial escheat statute because it simply mandates a transfer of the custody of unclaimed death
benefits from the carrier/city to the State. We agree.


 1. Doctrine of Escheat


 The doctrine of escheat is based on the power of every state to take charge of
apparently unclaimed or abandoned property. See Connecticut Mut. Life Ins. Co. v. Moore, 333
U.S. 541, 546-47 (1948). The State, more than any other person, is the proper custodian and
beneficiary of such property. See id. Providing for methods of disposing of property belonging
to unknown persons is a legislative function. See Standard Oil Co. v. New Jersey, 341 U.S. 428,
436 (1951). The purpose of personal property escheat statutes is to remove possession of the
property from the current holder and transfer possession into the hands of the State after the
property has remained unclaimed or abandoned for a certain period of time. See State v. Texas
Elec. Serv. Co., 488 S.W.2d 878, 882 (Tex. Civ. App.--Fort Worth 1972, no writ).

 Escheat statutes are generally classified as either absolute or custodial. See Billy
F. Hicks, Escheat in Texas: A Current Look at the Intangible Issue, 29 Sw. L.J. 575, 577 (1975). 
Under absolute statutes, title to the property vests in the State; under custodial statutes, on the
other hand, the state gains custody of the property, but title remains with the true owner, and the
State must return the property if a rightful claimant appears. (6) See id. Many statutes are hybrid
in nature, whereby the state has mere custody for a certain period of time, but thereafter the
claimant is barred from collecting. See id.

 Currently, unclaimed and abandoned personal property subject to escheat in Texas
is governed primarily through the broad escheat provisions found in Chapters 71 and 72 of the
Texas Property Code. See Tex. Prop. Code Ann. §§ 71.001-.304, 72.001-.103 (West 1995 &
Supp. 1999) ("general escheat statutes"). In addition, however, there are more specific escheat
statutes such as those dealing with funds held by banking institutions (7) and life insurance proceeds
that remain unclaimed for three years. (8) The Texas general escheat statute for unclaimed property
is hybrid in nature. See id. § 71.301(a). In contrast, the provision for unclaimed life insurance
proceeds allows a claimant to retrieve money from the state at any time, making it a true custodial
statute. See Tex. Ins. Code Ann. art. 4.08, § 10 (West Supp. 1999).

 We find the challenged statutory provisions in the present appeal to be similar to
the various Texas escheat statutes. Like the escheat statutes, sections 403.007 and 408.184 of the
Labor Code simply mandate that personal property left unclaimed for a certain length of time (9)
shall be transferred to the custody of the State via the Subsequent Injury Fund. Indeed, the
challenged provisions are particularly analogous to the pure custodial escheat statute governing
unclaimed life insurance benefits. Under both schemes, the State never gains absolute title to the
property because there is no limitations period after which the true owner is absolutely barred
from seeking the benefits from the State. See Ins. Code art. 4.08, § 10 (person claiming right to
funds may file claim with State "at any time"); see also Lab. Code § 409.007 (claim of entitlement
must be filed with TWCC within one year or be barred unless the beneficiary is a minor or good
cause exists for late filing).

 Accordingly, contrary to the Risk Pool's position, the Fund's mandatory
contribution scheme does not take money away from the members of the Pool and give it to the
State; rather, the State simply takes custody of unclaimed personal property through an escheat-like procedure. The beneficiary's entitlement to death benefits "begins on the day after the date
of an employee's death." Lab. Code § 408.183(a). Therefore, at the time of the covered
employee's death, the death benefits become a debt owed; the city becomes nothing more than the
holder of the beneficiary's funds until the funds are claimed. See Prop. Code § 72.001(e)
(a "holder" is a person in possession of property belonging to another; a trustee; or one indebted
to another on an obligation); see also Central Power & Light Co. v. State, 410 S.W.2d 18, 21,
23 (Tex. Civ. App.--Corpus Christi 1966, writ ref'd n.r.e.), cert. denied, 389 U.S. 933 (1967)
(in escheat case, electric company was holder of unclaimed deposits due to customers; relationship
between company and customer was that of debtor and creditor); Southern Pac. Transp. Co. v.
State, 380 S.W.2d 123, 125 (Tex. Civ. App.--Houston 1964, writ ref'd) (in escheat case, holder
of unpaid wages was debtor, and rightful owner was creditor). If the benefits are not claimed
within the specified amount of time, the State takes the city's place as holder of the funds pending
the later appearance of a true owner. See Lab. Code § 403.007(d).

 Moreover, absent the Fund's mandatory contribution scheme, the unclaimed death
benefits arguably would have been subject to the general escheat statute. See Prop. Code
§§ 71.001-.304. It may be that the legislature simply chose to administer this type of unclaimed
death benefits through the Fund rather than through the general escheat statute. In any event,
because the money no longer belongs to the contributing city at the time it is acquired by the State,
it can be neither a "lending of credit" prohibited by article III, section 52(a) of the Texas
Constitution nor a "recapture of local taxes" prohibited by article VIII, section 1-e. (10)


 2. Limitations

 

 This does not end our inquiry, however. As previously discussed, when the State
acquires property through custodial escheat statutes, it simply gains custody of the property until
the rightful owner makes a claim. The State steps into the shoes of the actual owner and therefore
takes only that to which the absent owner would be entitled. See Texas Elec. Serv., 488 S.W.2d
at 881. Consequently, if the actual owner would be barred from collecting because of limitations,
the State, because it acquires no rights greater than the rights held by the actual owner, would
likewise be barred from escheating the property. See Southern Pac. Transp., 380 S.W.2d at 126;
see also Central Power & Light, 410 S.W.2d at 21-22. The right to assert limitations is vested
and may not be divested by the State through escheat. See Shell Oil Co. v. State, 442 S.W.2d 457,
458 (Tex. Civ. App.--Houston [14th Dist.] 1969, writ ref'd n.r.e.); Central Power & Light, 410
S.W.2d at 21-22; Southern Pac. Transp., 380 S.W.2d at 126. In such a case, the funds revert
back to the original holder. Cf. Shell Oil, 442 S.W.2d at 460-61; Central Power and Light, 410
S.W.2d at 27; Southern Pac. Transp., 380 S.W.2d at 128 (all holding that where state is barred
from escheat due to limitations, initial holder is not required to make payment to state claiming
escheat).

 The limitations period for asserting a claim for workers' compensation death
benefits is one year, unless the beneficiary is a minor or "good cause" is shown for a late claim. 
See Lab. Code § 409.007(b). Because this is not an absolute bar to asserting a claim, title to death
benefits would not revert back to the original holder unless and until the holder asserted and
prevailed on a limitations defense. Only under this scenario--where the city regains ownership
of the unclaimed death benefits--could the mandatory contribution requirements contained in 
sections 403.007(a) and 408.184(c) of the Labor Code even arguably be an unconstitutional
lending of credit or imposition of a state ad valorem tax. (11)

 We make no comment on the validity of a constitutional challenge in a case where
the city has successfully claimed limitations. Here, however, the Risk Pool did not assert
limitations against the State. Because it did not do so, it has not shown that the statutory scheme
in issue is unconstitutional as applied to the Pool members under the particular circumstances
presented in this case, and thus has not met the burden required to sustain an "as applied"
constitutional challenge.

 In an "as applied" constitutional challenge, the challenger must show the statute in
issue is unconstitutional when applied to the challenger because of the challenger's particular
circumstances. See Texas Workers' Comp. Comm'n v. Garcia, 893 S.W.2d 504, 518 (Tex. 1995). 
To so do, the challenger could show either that (1) the circumstances complained of exist under
the facts of the particular case, or (2) such circumstances necessarily exist in every case, so that
the statute always acts unconstitutionally when applied to the challenger. It is not enough to show
that the statute may operate unconstitutionally against the challenger or someone in a similar
position in another case. See Nelson v. Krusen, 678 S.W.2d 918, 923 (Tex. 1984) (parents
showed particular circumstances of son's injury rendered limitations statute unconstitutional as
applied to them) (distinguishing Sax v. Votteler, 648 S.W.2d 661 (Tex. 1983), as having no
particular circumstances rendering limitations statute unconstitutional as applied to injured
complainants).

 In the present case, the Risk Pool has not shown that the statutory scheme at issue
is unconstitutional as applied to the city members, either because it always acts unconstitutionally
when applied to cities or because of the particular circumstances presented in this case. The Pool
has not challenged the constitutionality of any specific payment made into the Fund and has not
raised the defense of limitations. Because the Pool has failed to meet its burden for an "as
applied" challenge, the trial court erred in declaring sections 403.007(a) and 408.184(c) of the
Labor Code and the accompanying TWCC rules to be unconstitutional as applied to the Pool.


CONCLUSION



 We reverse the judgment of the trial court and render judgment that the Risk Pool
has failed to show that the challenged provisions are unconstitutional as applied to the member
cities in the present case.



 
 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Reversed and Rendered

Filed: June 17, 1999

Publish
1. Texas Workers' Compensation Act, Tex. Lab. Code Ann. §§ 401.001 - 506.001 (West 1996
& Supp. 1999). The challenged provisions are found at sections 403.007(a) and 408.184(c).
2. See 28 Tex. Admin. Code §§ 132.10-.12 (1998).
3. "Insurance carrier" is defined to include governmental entities that self-insure, either
individually or collectively. See Lab. Code § 401.011(27)(C).
4. TWCC contends the trial court erred because the statutory provisions and TWCC rules are
not facially unconstitutional. The Risk Pool's pleadings, however, indicate that it brought an
"as applied" constitutional challenge.  The trial court's judgment is clearly based on the
unconstitutionality of the statutory provisions and TWCC rules as applied to the Pool members. 
We will therefore treat this suit as an "as applied" constitutional challenge.
5. TWCC mischaracterizes the "acceptance of benefits" rule as one of standing, thus
implicating jurisdictional concerns. This rule is actually based on the doctrine of equitable
estoppel and therefore does not raise a jurisdictional question. See Fahey v. Mallonee, 332 U.S.
245, 255 (1947); Texas Workers' Comp. Comm'n v. Garcia, 862 S.W.2d 61, 69 (Tex. App.--San
Antonio 1993), rev'd on other grounds, 893 S.W.2d 504 (Tex. 1995); Prudential, 626 S.W.2d
at 833.

6. Nonetheless, even custodial property may be used by the State to produce revenue. See Tex.
Prop. Code Ann. §§ 74.601-.602 (West 1995 & Supp. 1999); see also Billy F. Hicks, Escheat in
Texas: A Current Look at the Intangible Issue, 29 Sw. L.J. 575, 577 (1975).
7. See Tex. Prop. Code Ann. §§ 73.001-.102 (West 1995 & Supp. 1999).
8. See Tex. Ins. Code Ann. art. 4.08 (West 1981 & Supp. 1999).
9. The TWCC rule implementing section 403.007 provides for payment into the Fund after the
TWCC has made a determination that no legal beneficiary survives, or that a claim for death
benefits has not been timely made. See 28 Tex. Admin. Code § 132.10(b) (1998).
10. Under the predecessor to the general escheat statute for abandoned property, the list of
holders subject to the terms of the statute included "governmental subdivisions." See Act of Aug.
8, 1961, 57th Leg., 1st C.S., ch. 21, sec. I, § 1(a), 1961 Tex. Gen. Laws 49, 50 (Tex. Rev. Civ.
Stat. Ann. art. 3272a, § 1(a), since repealed). Although the current version no longer specifically
lists the types of holders subject to the statute, we find it persuasive that governmental entities
have been classified as holders subject to escheat in the past with no apparent constitutional
infirmity.
11. Even if filing a death benefits claim was absolutely precluded after one year, with no
exception for minors or a showing of "good cause," our analysis would be much the same. After
one year, the legal beneficiary could be barred from collecting by limitations, and the city could
regain ownership of the benefits. If the city failed to assert limitations, however, the actual owner
would still be entitled to collect and the State would therefore still be entitled to escheat. See
Texas Elec. Serv., 488 S.W.2d at 880 (while right to claim limitations is vested right, it must be
asserted or is waived). It follows, then, that if the city could assert limitations against the State
but failed to do so, the city would waive the limitations defense. See id. at 881.



 in declaring sections 403.007(a) and 408.184(c) of the
Labor Code and the accompanying TWCC rules to be unconstitutional as applied to the Pool.


CONCLUSION



 We reverse the judgment of the trial court and render judgment that the Risk Pool
has failed to show that the challenged provisions are unconstitutional as applied to the member
cities in the present case.



 
 J. Woodfin Jones, Justice

Before Chief Justice Aboussie, Justices Jones and B. A. Smith

Reversed and Rendered

Filed: June 17, 1999

Publish
1. Texas Workers' Compensation Act, Tex. Lab. Code Ann. §§ 401.001 - 506.001 (West 1996
& Supp. 1999). The challenged provisions are found at sections 403.007(a) and 408.184(c).
2. See 28 Tex. Admin. Code §§ 132.10-.12 (1998).
3. "Insurance carrier" is defined to include governmental entities that self-insure, either
individually or collectively. See Lab. Code § 401.011(27)(C).
4. TWCC contends the trial court erred because the statutory provisions and TWCC rules are
not facially unconstitutional. The Risk Pool's pleadings, however, indicate that it brought an
"as applied" constitutional challenge.  The trial court's judgment is clearly based on the
unconstitutionality of the statutory provisions and TWCC rules as applied to the Pool members. 
We will therefore treat this suit as an "as applied" constitutional challenge.
5. TWCC mischaracterizes the "acceptance of benefits" rule as one of standing, thus
implicating jurisdictional concerns. This rule is actually based on the doctrine of equitable
estoppel and therefore does not raise a jurisdictional question. See Fahey v. Mallonee, 332 U.S.
245, 255 (1947); Texas Workers' Comp. Comm'n v. Garcia, 862 S.W.2d 61, 69 (Tex. App.--San
Antonio 1993), rev'd on other grounds, 893 S.W.2d 504 (Tex. 1995); Prudential, 626 S.W.2d
at 833.

6. Nonetheless, even custodial property may be used by the State to produce revenue. See Tex.
Prop. Code Ann. §§ 74.601-.602 (West 1995 & Supp. 1999); see also Billy F. Hicks, Escheat in
Texas: A Current Look at the Intangible Issue, 29 Sw. L.J. 575, 577 (1975).
7. See Tex. Prop. Code Ann. §§ 73.001-.102 (West 1995 & Supp. 1999).
8. See Tex. Ins. Code Ann. art. 4.08 (West 1981 & Supp. 1999).
9. The TWCC rule implementing section 403.007 provides for payment into the Fund after the
TWCC has made a determination that no legal beneficiary survives, or that a claim for death
benefits has not been timely made. See 28 Tex. Admin. Code § 132.10(b) (1998).
10. Under the predecessor to the general escheat statute for abandoned property, the list of
holders subject to the terms of the statute included "governmental subdivisions." See Act of Aug.
8, 1961, 57th Leg., 1st C.S., ch. 21, sec. I, § 1(a), 1961 Tex. Gen. Laws 49, 50 (Tex. Rev. Civ.
Stat. Ann. art. 3272a, § 1(a), since repealed). Although the current version no longer specifically
lists the types of holders subject to the statute, we find it persuasive that governmental entities
have been classified as holders subject to escheat in the past with no apparent constitutional
infirmity.
11. Even if filing a death benefits claim was absolutely precluded after one year, with no
exception for minors or a showing of "good cause," our analysis would be much the same. After
one year, the legal beneficiary could be ba