TEXAS WORKERS' COMPENSATION
COMMISSION and Subsequent
Injury Fund, Appellants,

v.

TEXAS MUNICIPAL LEAGUE
INTERGOVERNMENTAL
RISK POOL, Appellee.

No. 03-98-00169-CV.

Court of Appeals of Texas,
Austin.

Sept. 14, 2000.

12. *Id.* at 657 (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11 th Cir. 1993)).

John Cornyn, Atty. Gen., Joseph A. Pitner, Asst. Atty. Gen., Tort Litigation Div., Austin, for appellant.

J. David Bickham, Jr., Vinson & Elkins, L.L.P., Austin, for appellee.

Before Chief Justice ABOUSSIE, Justices JONES and B.A. SMITH.

J. WOODFIN JONES, Justice.

The opinion and judgment filed herein on June 17, 1999 are withdrawn, and the following opinion is issued in lieu of the earlier one.

Appellee Texas Municipal League Intergovernmental Risk Pool ("Risk Pool") sued appellants Texas Workers' Compensation Commission ("TWCC") and the Subsequent Injury Fund ("Fund") seeking a declaratory judgment that certain provisions of the Texas Workers' Compensation Act[1] and the TWCC rules implementing those statutory provisions[2] are unconstitutional as applied to Risk Pool members. The trial court held the challenged statutory provisions and TWCC rules to be unconstitutional to the extent they require the Risk Pool to contribute to the Fund. We will reverse the judgment of the trial court and render judgment for appellants.

## BACKGROUND

### The Statutory Scheme

This case involves the interplay between the Subsequent Injury Fund, administered by TWCC, and the statutory requirement that political subdivisions provide workers' compensation coverage to their employees.

All political subdivisions are required to provide workers' compensation benefits to their employees by (1) becoming a self-insurer, (2) obtaining an insurance policy, or (3) joining with other political subdivisions to self-insure through a "joint insurance fund." See Tex. Lab.Code Ann. §§ 504.011, .016 (West 1996). The Risk Pool is a joint insurance fund consisting of more than 1600 Texas cities that have chosen to collectively self-insure.

The Subsequent Injury Fund is a special fund in the state treasury that is administered by TWCC. See id. § 403.006(a), (c) (West 1996). The Fund is liable for workers' compensation benefit payments whenever an injured employee from anywhere in Texas has suffered a compensable injury. that, combined with the effects of a previous injury, results in a condition for which the employee is entitled to lifetime workers' compensation benefits. Id. § 408.162 (West 1996).[3] Most states have adopted similar statutes implementing second- or subsequent-injury funds. See 7B John Alan Appleman, Insurance Law & Practice (Berdal ed.), § 4595 (1979). Such funds are meant to encourage employers to hire people with handicaps or pre-existing injuries. See id. If the employee suffers further injury, the employer is charged only with payments due to the employee for the new injury; the Fund covers the cost of the added severity caused by the combined effect of the prior and current injury. See id.

The Subsequent Injury Fund is funded through mandatory contributions from workers' compensation insurance carriers.[4] See id. §§ 403.007(a), 408.184(c) (West 1996). Simply put, the Fund claims death benefits that are payable to, yet left unclaimed by, a beneficiary. Specifically, if a covered person dies as a result of a compensable injury and has no legal beneficia-

---

1. Texas Workers' Compensation Act, Tex. Lab.Code Ann. §§ 401.001—506.002 (West 1996 & Supp.2000). The challenged provisions are sections 403.007(a) and 408.184(c) (West 1996).

2. See 28 Tex. Admin. Code §§ 132.10–.12 (2000).

3. The Fund is also liable for reimbursements to insurance carriers either within or outside the State that have paid benefits pursuant to a TWCC order that is later overturned on appeal. See Tex. Lab.Code Ann. § 410.029 (West Supp.2000).

4. "Insurance carrier" is defined to include governmental entities that self-insure, either individually or collectively. See Tex. Lab. Code Ann. § 401.011(27)(C) (West Supp. 2000).

ry at the time of death, the carrier must contribute 364 weeks of death benefits to the Fund. *See id.* § 403.007(a). Similarly, if a legal beneficiary ceases to exist before the expiration of 364 weeks, the carrier must contribute the difference between the amount paid to the beneficiary and the amount that would have been paid for 364 weeks. *See id.* § 408.184(c). TWCC has promulgated rules to implement sections 403.007(a) and 408.184(c). *See* Tex. Admin. Code §§ 132.10–.12 (2000). These mandatory contribution requirements form the basis of the Risk Pool's constitutional challenge.

### Procedural Background

In 1997, TWCC ruled that the municipal members of the Risk Pool are required to pay into the Fund any unclaimed death benefits pursuant to sections 403.007(a) and 408.184(c) and the related TWCC rules. In response to that determination, the Risk Pool sought declaratory relief that these statutory provisions and TWCC rules are unconstitutional as applied to the cities participating in the Risk Pool. The trial court agreed, finding that the provisions violated article III, section 52(a) of the Texas Constitution (prohibiting political subdivisions from lending credit or granting public money) and article VIII, section 1–e of the constitution (abolishing state ad valorem property taxes). This appeal followed.

In four issues, TWCC asserts that the statutory provisions and TWCC rules in question do not violate either constitutional provision[5] and that the Risk Pool lacks associational standing to bring a constitutional challenge on behalf of its members or, alternatively, lacks standing to bring this suit because it has accepted benefits under the very statutory scheme it now challenges.

**5.** TWCC contends the trial court erred because the statutory provisions and TWCC rules are not *facially* unconstitutional. The Risk Pool's pleadings, however, indicate that it brought an "as applied" constitutional challenge. The trial court's judgment is clearly

## DISCUSSION

### Associational Standing

■ The Texas Supreme Court has adopted the three-prong test for associational standing set forth by the United States Supreme Court in *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 447 (Tex.1993). Under that test, an association has standing to sue on behalf of its members when: (1) the members themselves have standing to sue in their own right; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) participation of the individual members in the lawsuit is not necessary. *See id.* (citing *Hunt,* 432 U.S. at 343).

TWCC concedes that prongs one and three are met in the present suit but contends the interests that the Risk Pool seeks to protect are not germane to the organization's purpose. TWCC argues that the Risk Pool has authority only to process and pay or defend claims, not to "crusade for the constitutional rights of municipalities." *See* Tex. Lab.Code Ann. § 504.016 (West 1996).

Clearly, the purpose of a joint insurance fund at its most basic level is to administer workers' compensation coverage on behalf of its members, *i.e.,* to pay or defend against workers' compensation claims brought by city employees. *See id.* §§ 504.011, .016. This, however, is the exact interest the Risk Pool seeks to further by its request for a declaratory judgment in this case—a determination whether the Risk Pool must pay workers' compensation death benefits on behalf of a member city.

based on the unconstitutionality of the statutory provisions and TWCC rules *as applied to the Risk Pool members.* We will therefore treat this suit as an "as applied" constitutional challenge.

Further, the bylaws of the Risk Pool show that the interest the Risk Pool seeks to protect is germane to the organization's purpose. The legislature has expressly allowed for a joint insurance pool such as the Risk Pool to be operated under bylaws established by its members. *See id.* § 504.016(c). The bylaws of the Risk Pool provide that its purpose and objectives are to "formulate, develop and administer a program of self-insurance for the [membership]." The bylaws allow the Risk Pool to hire an attorney to protect the members' funds. We believe that seeking a determination of what payments are required to be made by the Risk Pool on behalf of its members is germane to the organization's purpose as stated in its bylaws.

We conclude that the Risk Pool has met the second prong of *Hunt.* Accordingly, we hold that the Risk Pool has associational standing to bring this constitutional challenge.

### Acceptance of Benefits

■ TWCC next complains that the Risk Pool lacks standing to bring this declaratory action because it has sought reimbursement benefits pursuant to the same statutory scheme it now challenges. The Risk Pool denies that it has sought reimbursement benefits in the past but argues that, even if it had, such a consideration is irrelevant.

■ Generally speaking, a court will not pass on the constitutionality of a statute at the request of one who avails himself of its benefits. *See, e.g., McElhaney v. City of Tyler,* 926 S.W.2d 597, 602 (Tex. App.—Tyler 1996, writ denied); *Prudential Health Care Plan, Inc. v. Commissioner of Ins.,* 626 S.W.2d 822, 832–33 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

This Court has previously found, however, that participation in the workers' compensation system does not bar a constitutional challenge to the Act where participation in the system is *compulsory.* *See Ben Robinson Co. v. Texas Workers' Compensation Comm'n,* 934 S.W.2d 149, 153 (Tex.App.— Austin 1996, writ denied). The political subdivision members of the Risk Pool are statutorily required to provide workers' compensation coverage to their employees. *See* Tex. Lab.Code Ann. § 504.011. Therefore, the Risk Pool is not precluded from challenging the constitutionality of a portion of the Act by virtue of having acted on behalf of the member cities in accepting benefits under the Act.[6]

Having disposed of TWCC's standing arguments, we now turn to the constitutionality of the statutory provisions and TWCC rules at issue.

### The Constitutionality Issues

■ The trial court held that sections 403.007(a) and 408.184(c) of the Labor Code and the related TWCC rules violate the constitutional rights of the Risk Pool members. Article III, section 52(a) of the Texas constitution states that the legislature

shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

Tex. Const. art. III, § 52(a). The Risk Pool contends that the Fund's mandatory contribution scheme unconstitutionally requires member cities to "lend [their] credit or grant public money" because contribu-

---

**6.** TWCC mischaracterizes the "acceptance of benefits" rule as one of standing, thus implicating jurisdictional concerns. This rule is actually based on the doctrine of equitable estoppel and therefore does not raise a jurisdictional question. *See Fahey v. Mallonee,* 332 U.S. 245, 255, 67 S.Ct. 1552, 91 L.Ed.

2030 (1947); *Texas Workers' Compensation Comm'n v. Garcia,* 862 S.W.2d 61, 69 (Tex. App.—San Antonio 1993), *rev'd on other grounds,* 893 S.W.2d 504 (Tex.1995); *Prudential Health Care Plan, Inc. v. Commissioner of Ins.,* 626 S.W.2d 822, 832–33 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

tions made into the Fund are later distributed throughout the State with no guarantee that the money will benefit the paying city. Article VIII, section 1–e provides that "[n]o State ad valorem taxes shall be levied upon any property within this State." Tex. Const. art. VIII, § 1–e. The Risk Pool argues that requiring its city members to pay unclaimed death benefits into the Fund allows the State to "recapture" local tax dollars and redistribute them to other parts of the state, thus effectuating a means to indirectly collect an unconstitutional state ad valorem tax. *See Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.,* 826 S.W.2d 488 (Tex.1992); *Edgewood Indep. Sch. Dist. v. Kirby,* 804 S.W.2d 491, 500 (Tex.1991).

Pursuant to sections 403.007 and 408.184 of the Labor Code, workers' compensation carriers, including self-insuring cities, must contribute to the Fund death benefits for which "no legal beneficiary survives or a claim for death benefits is not timely made" or for which "all legal beneficiaries ... cease to be eligible." Tex. Lab.Code Ann. §§ 403.007, 408.184. If, after the carrier makes a payment to the Fund, it is later determined that a legal beneficiary is entitled to the death benefits, the Fund must reimburse the carrier the amount overpaid. *See id.* § 403.007(d). TWCC argues, and we agree, that this statutory scheme is most analogous to a custodial escheat statute. It does not violate the constitutional provisions cited above because the Fund never actually takes *title* to the monies paid to it by the Risk Pool and other insurers.

### 1. *Doctrine of Escheat*

 Based on the power of a state to take charge of apparently unclaimed or abandoned property, escheat statutes function to transfer possession of property interests from the current holder to the State after the property has remained unclaimed or abandoned for a certain period of time. *See Connecticut Mut. Life Ins. Co. v. Moore,* 333 U.S. 541, 546–47, 68 S.Ct. 682, 92 L.Ed. 863 (1948); *State v. Texas Elec. Serv. Co.,* 488 S.W.2d 878, 882 (Tex.Civ.App.—Fort Worth 1972, no writ). The legislature is charged with prescribing a method to dispose of such property belonging to unknown persons. *See Standard Oil Co. v. New Jersey,* 341 U.S. 428, 435–36, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). Most states have statutes providing for escheat of real and personal property. *See* Billy F. Hicks, *Escheat in Texas: A Current Look at the Intangible Issue,* 29 Sw. L.J. 575, 578 (1975).

 Escheat statutes are generally classified as either absolute or custodial. *See id.* at 577. Under absolute statutes, title to the property vests in the State; under custodial statutes, on the other hand, the state merely gains custody of the property while title remains with the true owner, and the State must return the property if a rightful claimant appears. *See id.* In fact, it is often said that calling a custodial scheme an *escheat* is a misnomer, for these statutes do not effect a true escheat at all. *See, e.g., TXO Prod. Corp. v. Oklahoma Corp. Comm'n,* 829 P.2d 964, 971–72 (Okla.1992); *State ex rel. Frank Marsh v. Nebraska State Bd. of Agric.,* 217 Neb. 622, 350 N.W.2d 535, 539 (1984); 30A C.J.S. *Escheat* § 2(b) (1992). Because they involve the state taking custody, rather than title, to the property, they are more properly referred to as "custodial taking" statutes. *See TXO Prod. Corp.,* 829 P.2d at 971–72. The distinction between custodial and true escheat statutes is more than a matter of semantics. True escheat statutes are founded on the ancient principle that the sovereign may acquire title to abandoned property when no rightful owner appears; in essence, the state holds the rights of a feudal lord. *See* 30A C.J.S. *Escheat* § 2(A). Custodial statutes, by contrast, do not divest the "true owner" of title and instead serve the dual purposes of reuniting owners with unclaimed funds or property and giving the state, rather than the holder, the benefit of the use of the unclaimed funds or

property pending reclamation. *See id.* § 2(b); *Louisiana Health Serv. & Indem. Co. v. Tarver*, 635 So.2d 1090, 1092 (La. 1994).[7]

In Texas, escheat of unclaimed and abandoned personal property is primarily governed through broad provisions found in the Property Code. *See* Tex. Prop.Code Ann. §§ 71.001–.304, 72.001–.103 (West 1995 & Supp.2000). The general escheat scheme is hybrid in nature; the state has mere custody for a certain period of time, following which a claimant is barred from collecting. *See id.* § 71.301(a) (West Supp. 2000); *see also* Billy F. Hicks, *Escheat in Texas: A Current Look at the Intangible Issue*, 29 Sw. L.J. 575, 578 (1975). More specific escheat statutes deal with commonly recurring situations, such as deposits held by banking institutions and life insurance proceeds that remain unclaimed for three years. *See* Tex. Prop.Code Ann. §§ 73.001–.102 (West 1995 & Supp.2000); Tex. Ins.Code Ann. art. 4.08 (West 1981 & Supp.2000). In contrast to the general hybrid scheme, the provision for unclaimed life insurance proceeds is a true custodial statute, allowing a claimant to retrieve money from the state at any time. *See* Tex. Ins.Code Ann. art. 4.08, § 10 (West Supp.2000). The challenged provisions of the Labor Code are analogous to this life insurance escheat statute.

Under article 4.08 of the Insurance Code, the State "assumes, for the benefit of those entitled to receive [unclaimed life insurance benefits] and for the safety of the money so paid, the custody of such unclaimed funds." *See* Tex. Ins.Code Ann. art. 4.08, sec. 7 (West Supp.2000). Similarly, sections 403.007 and 408.184 of the Labor Code mandate that personal property left unclaimed for a certain length of

time shall be transferred to the custody of the State via the Subsequent Injury Fund.[8] Under both statutes, the State steps into the shoes of a beneficiary and claims custody of benefits payable upon the death of the insured. But unlike the general hybrid provision, the State never gains absolute title to the property because there is no limitations period after which the true owner is absolutely barred from recovering the benefits from the State. *See* Tex. Ins.Code Ann. art. 4.08, § 10 (West Supp.2000) (person claiming right to funds may file claim with State "at any time"); Tex. Lab.Code Ann. § 409.007 (claim of entitlement must be filed with TWCC within one year or be barred *unless* the beneficiary is a minor or *good cause exists for late filing*). Hence, both statutes essentially provide for a pure custodial escheat.

Accordingly, contrary to the Risk Pool's position, the Fund's mandatory contribution scheme does not take title to property away from the members of the Risk Pool and give it to the State; rather, the State simply takes custody of unclaimed property through an escheat-like—or "custodial taking"—procedure. If benefits are not claimed within a specified amount of time, the Fund stands in the stead of the beneficiary and collects the death benefits from the Risk Pool, subject to the later appearance of a "true owner" of the benefits. *See* Tex. Lab.Code Ann. § 403.007(d).

Because the challenged statutory scheme transfers only custody of, and not title to, the Risk Pool's funds, the "escheat" of the death benefits can be neither a "lending of credit" prohibited by article III, section 52(a) of the Texas Constitution nor a "recapture of local taxes" prohibited by article VIII, section 1-e.[9] Both consti-

---

**7.** During the custodial period, the State may generally use the property to produce revenue. *See id.*

**8.** The TWCC rule implementing section 403.007 provides for payment into the Fund after the TWCC has made a determination that no legal beneficiary survives, or that a

claim for death benefits has not been timely made. *See* 28 Tex. Admin. Code § 132.10(a) (2000).

**9.** Under the predecessor to the general escheat statute for abandoned property, the list of holders subject to the terms of the statute included "governmental subdivisions." *See*

tution provisions clearly contemplate a transfer of title, which is not effected by the sections of the Labor Code challenged here.[10]

### 2. Limitations

 This does not end our inquiry, however. As previously discussed, when the State acquires property through custodial escheat statutes, it simply gains custody of the property until the rightful owner makes a claim. The State steps into the shoes of the actual owner and therefore takes only that to which the absent owner would be entitled. *See State v. Texas Elec. Serv. Co.*, 488 S.W.2d 878, 881 (Tex. Civ.App.—Fort Worth 1972, no writ). Consequently, if the actual owner would be barred from collecting because of limitations, the State, because it acquires no rights greater than the rights held by the actual owner, would likewise be barred from claiming the property. *See Southern Pac. Transp. Co. v. State*, 380 S.W.2d 123, 126 (Tex.Civ.App.—Houston 1964, writ ref'd); *see also Central Power & Light Co. v. State*, 410 S.W.2d 18, 21–22 (Tex.Civ. App.—Corpus Christi 1966, writ ref'd n.r.e.). The right to assert limitations is vested and may not be divested by the State through escheat. *See Shell Oil Co. v. State*, 442 S.W.2d 457, 458 (Tex.Civ.

App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.); *Central Power & Light*, 410 S.W.2d at 21–22; *Southern Pac. Transp.*, 380 S.W.2d at 126. In such a case, the funds revert back to the original holder. *Cf. Shell Oil*, 442 S.W.2d at 460–61; *Central Power and Light*, 410 S.W.2d at 27; *Southern Pac. Transp.*, 380 S.W.2d at 128 (all holding that where state is barred from escheat due to limitations, initial holder is not required to make payment to state claiming escheat).

 The limitations period for asserting a claim for workers' compensation death benefits is one year, *unless* the beneficiary is a minor or "good cause" is shown for a late claim. *See* Tex. Lab.Code Ann. § 409.007(b). Because this is not an absolute bar to asserting a claim, custody of death benefits would not revert back to the original holder unless and until the holder asserted and prevailed on a limitations defense. Only under this scenario— where the city regains custody of the unclaimed death benefits—could the mandatory contribution requirements contained in sections 403.007(a) and 408.184(c) of the Labor Code even arguably be an unconstitutional lending of credit or imposition of a state ad valorem tax.[11]

Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 21, sec. I, § 1(a), 1961 Tex. Gen. Laws 49, 50 (Tex.Rev.Civ.Stat.Ann. art. 3272a, § 1(a), since repealed). Although the current version no longer specifically lists the types of holders subject to the statute, we find it persuasive that governmental entities have been classified as holders subject to escheat in the past with no apparent constitutional infirmity.

10. While the challenged Labor Code provisions effect only a custodial transfer, we note another reason that section 52(a) of article III is not violated by the Risk Pool's mandatory contribution to the Subsequent Injury Fund. The supreme court has held that section 52(a) and related provisions of article III are intended "to prevent the application of public funds to *private* purposes." *See Edgewood Indep. Sch. Dist. v. Meno*, 893 S.W.2d 450, 473 (Tex.1995) (quoting *Byrd v. City of Dallas*, 118 Tex. 28, 6 S.W.2d 738, 740 (Tex.1928) (emphasis added)). Accordingly, courts have held that "a transfer of funds for a *public*

purpose, with a clear *public* benefit received in return, does *not* amount to a lending of credit or grant of public funds in violation of article III, sections 51 and 52." *Id.* (emphasis added); *see Graves v. Morales*, 923 S.W.2d 754, 757 (Tex.App.—Austin 1996, writ denied) (public funds transferred to public employees to compensate them for occupation tax); *Harris County v. Hermann Hosp.*, 943 S.W.2d 547, 550 (Tex.App.—Eastland 1997, no writ) (transfer of funds from Harris County to hospital for care of prisoner). The scheme challenged here—whereby municipalities are required to transfer funds to the Subsequent Injury Fund with the clear public benefit of supporting injured workers—would seem to come within this exception to article III, section 52(a).

11. Even if filing a death-benefits claim was absolutely precluded after one year, with no exception for minors or a showing of "good cause," our analysis would be much the same.

**600**

We make no comment on the validity of a constitutional challenge in a case where the city has successfully claimed limitations. Here, however, the Risk Pool did not assert limitations against the State. Because it did not do so, it has not shown that the statutory scheme in issue is unconstitutional as applied to the Risk Pool members under the particular circumstances presented in this case and thus has not met the burden required to sustain an "as applied" constitutional challenge.

 In an "as applied" constitutional challenge, the challenger must show the statute in issue is unconstitutional when applied to the challenger because of the challenger's *particular circumstances. See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 518 (Tex.1995). To so do, the challenger could show either that (1) the circumstances complained of exist under the facts of the particular case or (2) such circumstances necessarily exist in every case, so that the statute always acts unconstitutionally when applied to the challenger. It is not enough to show that the statute *may* operate unconstitutionally against the challenger or someone in a similar position in another case. *See Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex.1984) (parents showed particular circumstances of son's injury rendered limitations statute unconstitutional as applied to them) (distinguishing *Sax v. Votteler,* 648 S.W.2d 661 (Tex. 1983), as having no particular circumstances rendering limitations statute unconstitutional as applied to injured complainants).

In the present case, the Risk Pool has not shown that the statutory scheme at issue is unconstitutional as applied to the city members, either because it always acts unconstitutionally when applied to cit-

ies or because of the particular circumstances presented in this case. The Risk Pool has not challenged the constitutionality of any specific payment made into the Fund and has not raised the defense of limitations. Because the Risk Pool has failed to meet its burden for an "as applied" challenge, the trial court erred in declaring sections 403.007(a) and 408.184(c) of the Labor Code and the accompanying TWCC rules to be unconstitutional as applied to the Risk Pool.

### CONCLUSION

We reverse the judgment of the trial court and render judgment that the Risk Pool has failed to show that the challenged provisions are unconstitutional as applied to the member cities in the present case.

After one year, the legal beneficiary *could* be barred from collecting by limitations, and the city *could* regain custody of the benefits. If the city failed to assert limitations, however, the actual owner would still be entitled to collect and the State would therefore still be entitled to escheat. *See State v. Texas Elec.*

*Serv.,* 488 S.W.2d 878, 880 (Tex.Civ.App.— Fort Worth 1972, no writ) (while right to claim limitations is vested right, it must be asserted or is waived). It follows, then, that if the city could assert limitations against the State but failed to do so, the city would waive the limitations defense. *See id.* at 881.