TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00212-CV






Charles H. Clark and Elizabeth Hajek, Individually, and on behalf of all

other persons similarly situated, Appellants


v.


Carole Keeton Strayhorn, Comptroller of Public Accounts, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT

NO. GN300872, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING





O P I N I O N




 Appellants Charles H. Clark and Elizabeth Hajek (collectively, Clark) filed suit in
Travis County alleging that the Comptroller's failure to pay interest when returning unclaimed
property was an unconstitutional taking. See U.S. Const. amend. V; Tex. Const. art. I, §§ 17, 19;
Tex. Prop. Code Ann. §§ 72.001- 74.710 (West 1995 & West Supp. 2005) (Unclaimed Property
Act). Clark moved to certify a class including all persons who had received payment for a claim
exceeding $100 under the unclaimed property act. After a hearing on certification and the viability
of Clark's claims, the district court denied the motion to certify the class and dismissed the suit. 
Clark appeals and asks this Court to certify the class and remand the case for further proceedings. 
Because the payment of interest to owners of unclaimed property is not required by statute or the
constitution, we affirm the district court's judgment.

PROCEDURAL POSTURE


 Before reaching the merits of Clark's appeal, we must first review the procedure
underlying the district court's judgment. Clark initially obtained a favorable ruling on summary
judgment. District Judge Patrick Keel denied the Comptroller's motion for summary judgment (1) and
granted partial summary judgment holding that the Comptroller's retention of any interest earned on
unclaimed property would be an unconstitutional taking. Later, District Judge Gisela Triana (2) denied
the Comptroller's motion for rehearing of its motion for summary judgment, and the case proceeded
to a hearing on the issue of class certification before District Judge Scott Jenkins. 

 At the class certification hearing, the district court heard expert testimony regarding
the class certification requirements. The hearing then turned to the question of whether the State had
actually earned interest on unclaimed property as alleged by Clark. In response to an open records
request, the Comptroller had initially reported earning millions of dollars of interest on unclaimed
property. This report had been corrected in writing before the hearing, and witnesses for the
Comptroller testified that no interest had been earned because unclaimed property is deposited into
an account that has a negative balance. The Comptroller asserts that the money is spent the moment
it is received. 

 Without resolving the fact dispute on interest, Judge Jenkins acknowledged the prior
partial summary judgment, but explained that he was compelled to revisit the issue:


I've never been in a situation where we've already had partial summary judgments
on a prospective class action. And again, I said at the outset that this is a classic case
for a Rule 2.6 under our local rules, assignment to a particular judge. It's just one of
those things that didn't happen and now we've had three judges touch it. 


But I'm in the position where I'm going to--before I amplify this ruling to
somewhere in the neighborhood of 200,000 Texans prospectively, I'm going to
scrutinize the summary judgment. And if I conclude that it's not a viable claim,
notwithstanding that ruling being the ruling in the plaintiffs' case here, then I'm
going to decline to grant the class certification.



(Emphasis added.) Citing the recent supreme court opinion in State Farm Mutual Automobile
Insurance Co. v. Lopez, 156 S.W.3d 550, 557 (Tex. 2004), Judge Jenkins issued a case dispositive
order stating that the court "tried the issue of whether a class member can state a viable takings
claim, before considering a ruling on the issue of class certification." (Emphasis added.) In his
order, Judge Jenkins determined that Clark had not asserted a viable takings claim, denied the
motion to certify the class, and dismissed Clark's suit.

 In Lopez, the supreme court held that "dispositive issues should be resolved by the
trial court before certification is considered." Id. Lopez could not and did not create a new
procedural device for making a case dispositive ruling in the context of a class certification hearing. 
"Deciding the merits of the suit in order to determine the scope of the class or its maintainability as
a class action is not appropriate." Intratex Gas Co. v. Beeson, 22 S.W.3d 398, 404 (Tex. 2000). 
"Viability" is not a requirement for class certification under Rule 42. See Tex. R. Civ. P. 42. The
cited language from Lopez simply emphasizes that case dispositive issues, such as might be raised
by special exception or a motion for summary judgment, should be resolved before a court considers
the question of class certification under Rule 42. See Lopez, 156 S.W.3d at 556-57 (admonishing
trial courts not to "certify now and worry later"). It is clear from the district court's dispositive order
that Judge Jenkins understood the basic holding of Lopez and that he was reconsidering the prior
rulings on the State's motion for summary judgment before ruling on class certification. (3) See
Fruehauf Corp. v. Carillo, 848 S.W.2d 83, 84 (Tex. 1993) (trial court has power to set aside
interlocutory orders any time before final judgment entered); Loy v. Harter, 128 S.W.3d 397, 409
(Tex. App.--Texarkana 2004, pet. denied) (trial court has inherent authority to reconsider partial
summary judgment at any time until plenary power expires). Accordingly, the district court's order
dismissing Clark's case is properly construed as a summary judgment in favor of the State, and
Clark's appeal is from that summary judgment. 


DISCUSSION


 Clark's challenge to the district court's summary judgment is premised on his
interpretation that the statute requires the Comptroller to pay interest on unclaimed property in her
possession. Clark argues that the statute is constitutional and that the Comptroller's failure to pay
interest on returned unclaimed property both violates the statute and amounts to an unconstitutional
taking. See U.S. Const. amend. V; Tex. Const. art. I, §§ 17, 19. Citing specific language in the
statute that requires the Comptroller to invest unclaimed property and keep it safe, Clark asserts that
the legislature intended that the Comptroller hold unclaimed property in trust and pay interest to
owners. See Tex. Prop. Code Ann. §§ 74.304(a), .601. To support this assertion, Clark relies on the
custodial nature of the statute. Thus, Clark compares the Comptroller's possession of unclaimed
property to other contexts in which courts have found that interest is owed when the State holds
private property.

 We hold that there is no unconstitutional taking of interest on property that is
presumed abandoned. Viewed as a whole, the statute does not establish a trust relationship between
the Comptroller and the original owner of unclaimed property. Rather, the unclaimed property act
creates a mechanism for individuals to reclaim their lost property but empowers the Comptroller to
use abandoned property for the benefit of the State until a claim of ownership has been asserted.


The Unclaimed Property Act

 Under the unclaimed property act, personal property is presumed abandoned if, for
longer than three years, (1) the existence and location of the owner is unknown to the holder of the
property and (2) a claim to the property has not been asserted or an act of ownership has not been
exercised. (4) Id. § 72.101. Holders of property presumed abandoned are required to deliver that
property to the Comptroller. Id. § 74.301. A holder who fails to deliver property within the
prescribed time must pay penalties and interest to the Comptroller. Id. §§ 74.705, .706.

 The statute requires the Comptroller to keep a record of all property received and to
deposit the property in the "general revenue fund." Id. § 74.601(a), (b). The statute anticipates that
the Comptroller will invest the property:


(d) Except as provided by Subsection (e), the comptroller shall from time to time
invest the amount of unclaimed money in investments approved by law for the
investment of state funds.


(e) The comptroller may from time to time sell securities, including stocks, bonds,
and mutual funds, received under this chapter or any other statute requiring the
delivery of unclaimed property to the comptroller and use the proceeds to buy,
exchange, invest, or reinvest in marketable securities. When making or selling
the investments, the comptroller shall exercise the judgment and care of a
prudent person.



Id. § 74.601 (d), (e).

 The unclaimed property act contains detailed provisions requiring the Comptroller
to give notice to property owners of their right to recover unclaimed property in the Comptroller's
possession. Id. §§ 74.201-.205. A list of all owners must be compiled and made available to the
public. Id. § 74.307.

 The statute sets forth procedures through which an owner may reclaim property by
filing a claim with either the Comptroller or the original holder of the property. Id. §§ 74.501, .502
(claim filed with Comptroller), 76.501-.505 (claim filed with holder). The Comptroller may hold
a hearing to determine the validity of a claim. Id. § 74.504. That determination, or the
Comptroller's failure to make a timely decision, may be appealed by filing suit against the State in
district court in Travis County. Id. § 74.506.


Statutory Construction

 The unclaimed property act does not contain any provision directing the Comptroller
to pay interest to owners. Clark asserts that the statute implies a trust relationship between the State
and owners that creates a duty to pay interest. We will examine Clark's construction of the statute
in light of its plain language. See Texas Nat. Res. Conservation Comm'n v. Lakeshore Util. Co., Inc.,
164 S.W.3d 368, 378 (Tex. 2005) (we ascertain and give effect to legislature's intent by looking at
plain language of statute). We derive the legislature's intent by reading the entire act, not a single
section in isolation. See id.; Fitzgerald v. Advanced Spine Fixation Sys., 996 S.W.2d 864, 866
(Tex.1999).

 Clark's contention that unclaimed property is held in trust for owners and that interest
must be paid rests primarily on two provisions in the statute. First, "the state shall assume custody
of the property and responsibility for its safekeeping." Tex. Prop. Code Ann. § 74.304(a). Section
74.601 also instructs the Comptroller to "from time to time invest" the unclaimed property, and when
making such investments, "exercise the judgment and care of a prudent person." Id. § 74.601(d),
(e). We agree that these provisions confirm the custodial nature of the statute, but conclude that the
Comptroller is directed to invest the unclaimed property for the benefit of the State, not the owners.

 Escheat statutes like the unclaimed property act can be either absolute or custodial
in nature. See Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Comp. Comm'n,
74 S.W.3d 377, 382 (Tex. 2002). Under absolute escheat statutes, title passes to the State. Id. 
"Custodial statutes, by contrast, do not divest the 'true owner' of title and instead serve the dual
purposes of reuniting owners with unclaimed funds or property and giving the state, rather than the
holder, the benefit of the use of the unclaimed funds or property pending reclamation." Texas
Workers' Comp. Comm'n v. Texas Mun. League Intergovernmental Risk Pool, 38 S.W.3d 591, 597-98 (Tex. App.--Austin 2000), aff'd, 74 S.W.3d 377 (Tex. 2002) (citing 30A C.J.S. Escheat § 2(b)). 
In fact, it is widely accepted that unclaimed property statutes that are custodial in nature are intended
to allow use of the property to generate revenue for the State until the property is claimed by the
owner. See, e.g., Commonwealth Edison Co. v. Vega, 174 F.3d 870, 872 (7th Cir. 1999) (unclaimed
property is "an interest free loan to the state--in perpetuity if the owner never shows up to claim it");
Louisiana Health & Indem. Co. v. Tarver, 635 So.2d 1090, 1092 (La. 1994) (custodial escheat statute
serves two purposes--to raise revenue for state and safeguard unclaimed property); Fong v. Westley,
117 Cal. App. 4th 841, 844 (Cal. Ct. App. 2004); 1 David J. Epstein, Unclaimed Property Law and
Reporting Forms § 1.07; K. Reed Mayo, Virginia's Acquisition of Unclaimed and Abandoned
Property, 27 Wm. & Mary L. Rev. 409, 420 (1986) (uniform unclaimed property act provides states
method for raising revenue). 

 Clark relies on a recent opinion of the Ninth Circuit Court of Appeals to assert that
unclaimed property must be held "in trust." Taylor v. Westley, 402 F.3d 924, 931 (9th Cir. 2005). 
The Ninth Circuit explained that the use of "traditional trust language" in the California statute
established a custodial trust:


The care and custody of all property delivered to the Treasurer or Controller pursuant
to this title is assumed by the State for the benefit of those entitled thereto . . . 



Id. (quoting Cal. Civ. Proc. Code § 1361). Clark argues that Texas's unclaimed property act creates
a similar trust relationship by stating "the state shall assume custody of the property and
responsibility for its safekeeping." Tex. Prop. Code Ann. § 74.304(a). This comparison disregards
a key difference between California and Texas's unclaimed property acts. The California statute
requires that all funds received be deposited in a separate "trust fund for the interests of all parties
having an interest in the property." Taylor, 402 F.3d at 930 (citing Cal. Civ. Proc. Code § 1313). 
The court held that this provision created a custodial trust: "[T]o the extent that the funds remained
in the state's special account, they were being held in trust, rather than being in the state treasury." 
Id. at 931. (5) By contrast, the Texas statute directs that unclaimed property be deposited in the State's
general revenue fund, not in a separate trust fund for owners. See Tex. Prop. Code Ann. § 74.601(b). 
We hold that the Taylor opinion, relying as it does on the statutory creation of a separate trust fund
for owners, does not control our interpretation of the Texas act which has no such provision for a
custodial trust. 

 The only trust language in the Texas act is found in section 74.708, "Property Held
in Trust," and it establishes a trust relationship between the State and holders who fail to deliver
unclaimed property to the State:


A holder who on June 30 holds property presumed abandoned under Chapters 72-75
holds the property in trust for the benefit of the state on behalf of the missing owner
and is liable to the state for the full value of the property, plus any accrued interest
and penalty. A holder is not required by this section to segregate or establish trust
accounts for the property provided the property is timely delivered to the comptroller
in accordance with section 74.301.



Id. This section also makes clear that the property is held in trust for the benefit of the State, not for
the benefit of the owner. The legislature addressed when property should be held in trust and failed
to create a trust relationship between the State and the owner of unclaimed property. 

 Conspicuously, the legislature not only avoided creating such a trust relationship, but
greatly limited the Comptroller's liability to the owner of unclaimed property:


The comptroller is not, in the absence of negligence or mishandling of the property,
liable to the person who claims the property for damages incurred while the property
or the proceeds from the sale of the property are in the comptroller's possession. But
in any event the liability of the state is limited to the extent of the property delivered
under this chapter and remaining in the possession of the comptroller at the time a
suit is filed.



Id. § 74.304(d). (6) This provision limits the Comptroller's liability, regardless of any malfeasance, to
the amount of the property still in the Comptroller's possession. Such a limitation is inconsistent
with a trust relationship.

 As noted, the statute contains no specific directive that the Comptroller pay interest
to owners of unclaimed property. Compare id. § 74.501 (b), with id. § 74.705 (holder who fails to
deliver unclaimed property to State must pay interest). Viewing the statute as a whole, we hold that
it does not create a trust relationship that would require the Comptroller to pay interest to owners. 


Unconstitutional Taking

 Having found that owners are not entitled to interest under the unclaimed property
act, we next address Clark's claim that payment of interest is required by the constitution. Clark
does not contest a State's power to deem private property abandoned and allow that property to
escheat to the State. (7) See Texaco, Inc. v. Short, 454 U.S. 516, 530 (1982); Standard Oil Co. v. New
Jersey, 341 U.S. 428, 436 (1951). Even when an owner of unclaimed property retains title, however,
the State does not hold property in trust for the missing owners.

 For the State to take possession, property must first be presumed abandoned under
the statute. See Tex. Prop. Code Ann. § 72.101 (property presumed abandoned if unclaimed for over
three years). As a general rule, the United States Supreme Court has held that private property may
be deemed abandoned and that the State is not required to "compensate the owner for the
consequences of his own neglect." Texaco, Inc., 454 U.S. at 530. This principle has been relied
upon to hold that other custodial escheat statutes do not violate the takings clause. In In re Folding
Carton Antitrust Litigation, the Seventh Circuit Court of Appeals considered the constitutionality
of a statute providing that, after five years, unclaimed funds held in the registry of the court be
deposited in the Treasury in the name and to the credit of the United States. 744 F.2d 1252, 1255
(7th Cir. 1984) (discussing 28 U.S.C.A. § 2042). Claimants were still permitted to petition the court
for return of their funds. Id. The Seventh Circuit found no unconstitutional taking:


Since any legitimate claimant has been afforded an adequate remedy against the
United States, there is no bar to interim governmental use of the escheated money
"deposited in the Treasury and to the credit of the United States."



Id. (quoting 28 U.S.C.A. § 2042). The same reasoning has been applied to defeat takings challenges
to unclaimed property statutes in other states. See Smolow v. Hafer, 867 A.2d 767, 775 (Pa.
Commw. Ct. 2005) (no unconstitutional taking where abandonment of property, not action of State,
caused pecuniary loss); Fong, 117 Cal. App. 4th at 853 ("No unconstitutional taking occurs where
a state exercises its right to take custody of abandoned property, as opposed to taking absolute
title."). We conclude that this principle applies with equal force to Texas's unclaimed property act. 
Once the property is presumed abandoned, the State's lawful use of that property for its own benefit
cannot be an unconstitutional taking. See Texaco, Inc., 454 U.S. at 530; In re Folding Carton
Antitrust Litigation, 744 F.2d at 1255; Smolow, 867 A.2d at 775; Fong, 117 Cal. App. 4th at 854. 
 Arguing that Texaco, Inc. v. Short and its progeny do not apply to this case, Clark
directs us to cases discussing an owner's right to interest earned on interpleader funds and IOLTA (8)
accounts. In Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 164-65 (1980), the
United States Supreme Court held unconstitutional a statute allowing a county to retain interest
earned on an interpleader fund deposited in the registry of the court. The United States Supreme
Court rejected the lower court's characterization that funds deposited into a court's registry
temporarily assumed the status of "public money." Id. at 163. The Court noted that the interest on
interpleader funds retained by the county bore no relation to any burden on the court and, thus the
state's use of the funds while in the court's registry violated the Takings Clause of the Fifth
Amendment. Id. at 164. The Court explained that "the earnings of a fund are incidents of ownership
of the fund itself and are property just as the fund itself is property." Id. In Sellers v. Harris County,
the Texas Supreme Court similarly held that a county may not constitutionally retain the interest
earned on interpleader funds. See 483 S.W.2d 242, 243 (Tex. 1972) (interpleader funds held "in
trust" and earnings on fund are incident of ownership). The United States Supreme Court has also
held that interest earned by IOLTA accounts is the private property of the owner of the principal. 
Phillips v. Washington Legal Found., 524 U.S. 156, 172 (1998). Citing Webb's and Sellers, the
Court emphasized the common law notion that "interest follows principal." Id. at 165. Clark would
have us apply this legal axiom to unclaimed property.

 But Clark overlooks an important distinction between the interpleader and IOLTA
cases and the issue of interest earned on unclaimed property. Interpleaded funds and funds deposited
in an IOLTA account are held in trust for the owner. As we have discussed, unclaimed property
funds are not. There is also no question as to who has asserted ownership of the interpleaded or
IOLTA funds. By contrast, property delivered to the Comptroller as "unclaimed" is presumed
abandoned. See Tex. Prop. Code Ann. §§ 72.101, 74.301. Until a missing owner asserts a claim,
it is wholly appropriate for the Comptroller to use unclaimed property for the benefit of the State
instead of allowing a windfall to a private holder or permitting the funds to lie fallow. Cf. Texaco,
Inc., 454 U.S. at 530. 

 We hold that the unclaimed property act does not require the State to hold unclaimed
property in trust or otherwise require payment of interest to owners. Moreover, the State's use of
unclaimed property and retention of any interest earned before the owner asserts a claim is not an
unconstitutional taking. Accordingly, we overrule Clark's constitutional issues and need not address
his other issues.


CONCLUSION


 We affirm the district court's summary judgment, its denial of class certification, and
its dismissal of the suit.



 Bea Ann Smith, Justice

Before Justices B. A. Smith, Pemberton and Waldrop

Affirmed

Filed: February 3, 2006

1. In its motion for summary judgment, the Comptroller argued that Clark was not entitled
to relief as a matter of law. The Comptroller's motion explained that the unclaimed property act did
not provide for interest to be paid to owners, that the State's use of unclaimed property was not an
unconstitutional taking, and that the reasoning in cases dealing with interpleader and IOLTA funds
did not apply to the State's use of unclaimed property.
2. Aspects of this case were heard by several judges because the district courts of Travis
County have established a central settings docket in which causes are not assigned to a particular
judge. Travis (Tex.) Civ. Dist. Ct. Loc. R. 1.1. Although the rules allow assignment to an individual
judge on the suggestion of any judge or after conference with the parties, it was not done in this case. 
See id. 2.6.
3. Although the order incorrectly recites that "the requirements of Rule 42 of the Texas Rules
of Civil Procedure have not been met because no class member is able to state a viable takings
claim," Judge Jenkins's comments in the record and the case-dispositive nature of the order
demonstrate that the court's ruling was based on the State's summary judgment motions and not the
class certification requirements.
4. Special provisions apply to unclaimed wages, stored value cards, traveler's checks, and
money orders. See Tex. Prop. Code Ann. §§ 72.1015, .1016, .102 (West Supp. 2005).
5. Similarly, the supreme court of Oklahoma held that unclaimed property is held "in trust"
when the Oklahoma statute required such property to be placed in a separate "Unclaimed Property
Fund." TXO Prod. Corp. v. Oklahoma Corp. Comm'n, 829 P.2d 964, 971-72 (Okla. 1992).
6. Clark attempts to limit this provision to property that has been physically damaged while
in the Comptroller's custody. However, the plain language does not support such a limitation. The
statute refers to "damages incurred while the property or the proceeds from the sale of the property
are in the comptroller's possession." Tex. Prop. Code Ann. § 74.304(d) (West Supp. 2005)
(emphasis added). The legislature would not have mentioned the proceeds from the sale of property,
presumably cash, if it meant to limit liability only for physical damage to property. 
7. Under the common law, an owner could be shown to have abandoned property by proof
of intent to relinquish a known property right. See, e.g., Huffington v. Upchurch, 532 S.W.2d 576,
579-80 (Tex. 1976); Railroad Comm'n of Tex. v. Waste Mgmt. of Tex., Inc., 880 S.W.2d 835, 843-44
(Tex. App.--Austin 1994, no writ). Texas, like other states, has long provided by statute that
property could be presumed abandoned by being unclaimed by its owner for a specified period of
years. See Act of March 21, 1885, 16th Leg., R.S., ch. 37, §§ 1-2, reprinted in 9 H.P.N. Gammel,
The Laws of Texas 1822-1897, at 655-66 (Austin, Gammel Book Co. 1898) (repealed) (formerly
Tex. Rev. Civ. Stat. art. 3272); Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 21, § 1, 1961 Tex. Gen.
Laws 49, 49-57 (repealed) (formerly Tex. Rev. Civ. Stat. art. 3272a). The unclaimed property
act--whose validity Clark does not challenge--is Texas's current enactment of this sort.
8. The Interest on Lawyers Trust Account (IOLTA) program requires certain client funds held
by an attorney to be deposited in an interest bearing account. Phillips v. Washington Legal Found.,
524 U.S. 156, 159-60 (1998). The interest income generated by the fund is paid to a foundation that
finances legal services for low-income individuals. Id.